KNOTT and another, Appellants, vs. TIDYMAN, Respondent.
KNOTT and another, Appellants, vs. TIDYMAN and others,
Respondents.

*September 28 — October 17, 1893.*

*Negotiable instruments: Intoxication: Fraud:* Bona fide *purchasers:
Agency.*

1. Notes and mortgages obtained, without consideration, from a person weak in mind and fond of liquor, by a designing and shrewd man whom he thought to be his friend, by plying him with liquor, playing on his fears as to the action of supposed creditors, threatening and cajoling him, until, in a state of intoxication and not realizing what he is doing, he signs the instruments, are void, both for lack of consideration and for fraud, in the hands of the payees and subsequent holders who are not *bona fide* purchasers.

2. Notice to an agent for the investment of moneys, of equities in favor of the makers of notes and mortgages in which he makes an investment thereof, is notice to his principal.

3. One who receives the notes of a third person, a part of which are past due, as collateral security for a pre-existing debt due him from the holder thereof, who had notice of equities in favor of the maker, is not a *bona fide* purchaser.

APPEALS from the Circuit Court for *Dodge* County.

One of these actions is founded upon three promissory notes signed by defendant *W. J. Tidyman*, for $125, $500, and $700, respectively, the first one being dated October 15, 1887, payable to *Samuel Roby* or bearer, April 1, 1888; the second dated August 24, 1887, payable to the order of *S. D. Roby* six months after date; the third, dated October 28, 1887, payable to *Mary E. Roby* (then the wife of *S. D. Roby*) or bearer one year after date,— and of all of which notes plaintiffs claim to be the owners and holders by transfer from one *P. R. Barnes.* The other action is brought to foreclose a certain real-estate mortgage given by defendant *Tidyman*, and *Albertina*, his wife, October 28, 1887, to secure a note of the same date given by *W. J. Tidyman* to

the order of *Mary E. Roby* two years after date. The complaint alleges that *James L. Knott* owns an interest in this note and mortgage to the amount of $1,020, derived by transfer to him of said note and mortgage by said *P. R. Barnes*, September 15, 1888 (in whose possession the same then were), as collateral security for a loan of $1,020 then made by said *Knott* to *Barnes.* The complaint also alleges that said *Barnes* was the agent of *John Knott* to loan $3,500 placed in *Barnes'* hands in May, 1888, and that *Barnes* invested of said moneys $1,693.65 for his own benefit, and secured the payment thereof to said *John Knott* by transfer of all his interest in said note and mortgage. The date of this last alleged transfer is not given, but interest is claimed on *John Knott's* share from October 1, 1888.

The defense is practically the same in both actions. It is: *First*, an entire want of consideration for any of the notes; *second*, that the execution of the notes and mortgage was procured by fraud practiced on *W. J. Tidyman* by *Roby;* and, *third*, knowledge of the invalidity of the notes on the part of the plaintiffs before they came into possession of the same. The facts constituting the fraud were alleged to be as follows, substantially: That *Tidyman* was weak of mind and easily influenced; that he was on intimate terms with *Roby*, and supposed him to be his friend; that *Roby* falsely represented to him (*Tidyman*) that creditors were about to prosecute claims against him and sweep away all his property; that then *Roby* would ply him with liquor, and take him from saloon to saloon, still preying on his fears, and finally, having got *Tidyman* into a state of intoxication where he did not know what he was doing, would procure the execution of the notes in suit. In this way it is alleged that *Roby* secured not only the execution of the notes and mortgage in suit, but also other notes and chattel mortgages covering all the property, real and per-

Knott and another vs. Tidyman and others.

sonal, which *Tidyman* had. It was also claimed that the signature of *Tidyman's* wife, *Albertina*, was obtained to the mortgage by false representations as to its nature, she not knowing what the paper was.

The cases were tried without a jury, and the same evidence used in both cases. The findings of the court were substantially the same in both cases. They were to the effect that there was no consideration for the notes or mortgages ever given; that their execution was procured by the fraudulent practices alleged in the answers; that *Barnes* had possession of them as attorney for the *Robys*, but never owned them nor paid anything for them; that *Barnes* had full knowledge of the equities claimed by defendants when he got possession of said notes; that *Barnes* was the agent for both plaintiffs for the loaning of their moneys when the plaintiffs claim to have come into possession of said notes; that the plaintiffs knew of the equities claimed to exist by defendant when they obtained possession of the notes; that the plaintiffs are not owners for value, or *bona fide* purchasers; and that the notes and mortgages are invalid and worthless. From judgments for defendants in both cases, plaintiffs appeal.

For the appellants there were briefs by *J. C. Kerwin* and *W. W. Quatermass*, and oral argument by *Mr. Quatermass*. They contended, *inter alia*, that the notes and mortgage in suit were given by *Tidyman* to defraud his creditors, and hence are good even between the original parties. He cannot set up his own fraud as a defense. *Clemens v. Clemens*, 28 Wis. 637; *Davy v. Kelley*, 66 id. 454; *Gill v. Henry*, 95 Pa. St. 388; *Evans v. Dravo*, 24 id. 62; *Blystone v. Blystone*, 51 id. 373; *Carpenter v. McClure*, 39 Vt. 9. Semi-intoxication is no defense. The drunkenness must be total and at the moment of executing the instruments. *Gore v. Gibson*, 13 Mees. & W. 623; *Gardner v. Gardner*, 22 Wend. 526; *Harbison v. Lemon*, 3 Blackf. 51; *Cavender*

*v. Waddingham*, 5 Mo. App. 457; *Bates v. Ball*, 72 Ill. 108.

For the respondent, *W. J. Tidyman*, in the first case there was a brief by *C. E. Hooker* and *J. E. Malone*, and in the second case a brief by the same attorneys for the respondents *W. J. Tidyman*, *C. E. Hooker*, *J. E. Malone*, and *Mary E. Roby;* and the causes were argued orally by *J. J. Dick* and *C. E. Hooker*.

WINSLOW, J. These cases present phases of human nature not pleasant to contemplate. A man, weak in mind and fond of liquor, falls into the hands of a designing and shrewd man whom he thinks to be his friend. The supposed friend plies him with liquor, plays on his fears as to the action of supposed creditors, threatens and cajoles him, until, in a state of intoxication and not realizing what he is doing, the victim at various times signs notes, chattel and real-estate mortgages, covering all his property, amounting to more than $3,000, without a shadow of consideration. That this constitutes fraud cannot be doubted. If courts cannot relieve against such impositions, they fail in an important part of their mission. But they can and do frequently relieve against just such machinations. *Kuelkamp v. Hidding*, 31 Wis. 503. See cases cited in the opinion of DIXON, C. J.

In the hands of *Roby* or his wife these securities were invalid for two reasons: First, because made absolutely without consideration; and, second, because they are the fruit of imposition, oppression, and undue advantage obtained by a cunning, sharp nature over a weak mind. They were conceived in sin and born in iniquity. But it is claimed that they are now in the hands of *bona fide* purchasers for value, and consequently the defenses of fraud and lack of consideration are no longer available. We shall not detail the evidence bearing on the manner in

Knott and another vs. Tidyman and others.

which these securities came into the possession of the plaintiffs. They came through the hands of *P. R. Barnes*, who obtained them in some manner and at some time from the *Robys*. The court found, and we agree in the conclusion, that *Barnes* paid no value for them, so that he cannot be considered a *bona fide* purchaser. The evidence shows, also, to our satisfaction, and evidently to the satisfaction of the court below, that *Barnes* had notice of the equities claimed by *Tidyman* as early as the middle of September, 1888. He obtained this knowledge by being employed by the *Robys* to defend an action in equity brought by *Tidyman* in March, 1888, to set aside and cancel the mortgage and its accompanying note, also the $125 note, on the ground of the fraud practiced by *Roby* on *Tidyman*. Then seems to have followed the jugglery by which *Barnes* endeavored to put the securities into the hands of the plaintiffs as *bona fide* purchasers. But the evidence shows they are not *bona fide* purchasers. *Barnes* was confessedly the agent of *John Knott* for the investment of his moneys, and had been such since May, 1888. The evidence shows that he attempted to invest part of *John's* funds in the mortgage and part in the notes. Just when this attempted investment of *John's* funds took place is not clear, but the evidence entirely satisfies us that it was after *Barnes* had knowledge of the fraudulent character of the securities. The $500 note and the $125 note were in the possession of the First National Bank of Waupun, as collateral to a note given by the *Robys*, from November 10, 1887, until September 18, 1888, so they could not have been used by *Barnes* until after that date. The $700 note is indorsed, "*Knott* collateral, Oct., '88." The conclusion is very strong to our minds, from the evidence, that the alleged interest of *John Knott* in these notes and in the mortgage was not acquired until after September 18, 1888, and after *Barnes* had full notice of the equities of

the defendants. Notice to *Barnes* was notice to his principal. It was fresh in *Barnes'* mind; it is incredible that he could have forgotten it. *Brothers v. Bank of Kaukauna,* 84 Wis. 381.

It is strenuously denied by the plaintiff *James* that *Barnes* was ever his agent for the investment of his moneys, but that he (*James*) obtained his interest in the securities by deals made by him personally with *Barnes,* and without notice of any equities. Even if this were the fact, the plaintiff *James,* under his own evidence, would not be a *bona fide* purchaser of the notes not secured by the real-estate mortgage. He testifies substantially that they were turned over to him by *Barnes* in October or November, 1888, as collateral security for the payment of a pre-existing indebtedness owing from *Barnes* to him, and that two of them, at least, were past due. Under these circumstances he was not a *bona fide* purchaser of the notes. *Jenkins v. Schaub,* 14 Wis. 1; *Bowman v. Van Kuren,* 29 Wis. 219.

There are many circumstances in the case which tend to throw doubt on the direct testimony of *James* that *Barnes* was not his agent for the investing of money. It seems that *James, John,* and their mother had funds in the spring of 1888 derived from the settlement of the estate of the father of *James* and *John.* The shares of *John* and the mother were confessedly handed over to *Barnes* to invest and reinvest. *Barnes* was the attorney of the estate, and *James* was the administrator. *James* admittedly gave securities to *Barnes* to collect. The note and mortgage were left in *Barnes'* possession after the alleged transfer to *James.* There was direct testimony to the effect that *James* admitted that *Barnes* had all their money to invest. From all the evidence we conclude that the testimony shows *Barnes* to have been the agent of *James* as well as *John,* and consequently that *James* is also chargeable with

the knowledge that *Barnes* had of the fraudulent character of these securities.

No other questions require consideration.

*By the Court.*— Judgments affirmed.